United States District Court
Southern District of Texas
**ENTERED**
August 20, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SEONG SONG and JAE BAK BAE, individually and on behalf of all others similarly situated, | § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | CASE NO. 4:17-CV-1775 |
| JFE FRANCHISING, INC. and JIM KIM, | § § § | |
| *Defendants*. | § § | |

## REPORT AND RECOMMENDATION

Plaintiffs bring this suit for unpaid overtime compensation as a collective action under the Fair Labor Standards Act of 1938 (the "FLSA" or "Act"), 29 U.S.C. §§ 201–19. Presently before the Court is Defendant Jim Kim's motion for summary judgment, ECF No. 68.[1] Having reviewed the parties' briefing,[2] the evidence presented, and the applicable law, the Court RECOMMENDS that the motion be DENIED.

---

[1] United States District Judge Kenneth M. Hoyt referred this case to the undersigned to conduct all further pretrial proceedings pursuant to 28 U.S.C. § 636. ECF No. 76. The present motion calls for a report and recommendation in accordance with 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b).

[2] Plaintiffs filed a response opposing the motion, ECF No. 71, and Defendant Kim filed a reply, ECF No. 72.

# I.  Background

Defendant JFE Franchising, Inc. ("JFE Franchising") is a Texas corporation engaged in the franchising and management of sushi kiosks located in grocery stores throughout the United States. ECF No. 68-1 at 6.[3] Defendant Jim Kim ("Defendant Kim" or "Defendant") is JFE Franchising's founder and chairman, as well as a shareholder in the company, and he "control[s] the business with a holding company." ECF No. 68-1 at 5; ECF No. 68-3 at 28.[4]

Between 2012 and 2017, Plaintiffs Seong Song, Jae Bak Bae, Matthew Kim, and Johnathan Olvera worked at JFE Franchising's headquarters in Houston. ECF Nos. 71-6, 71-7, 71-8, and 71-9. Plaintiffs' principal claim is that they were often required to work more than 40 hours per week but were not paid proper overtime compensation, in violation of the FLSA's overtime pay provision. ECF No. 46 ¶¶ 20, 23, 26, 29, 30, 32, 35.[5] They seek to hold both JFE Franchising and Defendant Kim

---

[3] Citations to specific pages of an electronically filed document correspond to the page numbers used in that document's PACER-generated header.

[4] In his answer to Plaintiffs' fourth amended complaint, Defendant Kim admits that he is JFE Franchising's chairman. ECF No. 47 ¶ 9 (admitting allegations contained at ECF No. 46 ¶ 9). Likewise, JFE Franchising's human resources manager, Christie Pak, testified that Defendant Kim is the company's chairman. ECF No. 68-3 at 28. Documents on file with the Texas Secretary of State also identify Defendant Kim as "chairman" and "director" of JFE Franchising. This evidence undermines Defendant Kim's assertion at deposition that he does not "have a position" with the company. ECF No. 68-1 at 5, 7.

[5] Plaintiffs also claim that Defendants violated the FLSA by failing to keep accurate records of the number of hours they and other nonexempt employees worked. ECF No. 46 ¶¶ 46–47 (citing 29 U.S.C. § 211(c) and 29 C.F.R. pt. 516). An employer's recordkeeping practices can support an employee's claim that the employer acted willfully in failing to pay overtime compensation. *Perez*

liable for this violation, alleging that both "employed" them within the meaning of the FLSA. ECF No. 46 ¶ 15. JFE Franchising admits that it employed Plaintiffs. ECF No. 47 ¶ 15. Plaintiffs also allege that Defendant Kim was their "employer" and/or a "joint employer." ECF No. 46 ¶¶ 13–14.

Defendant Kim denies Plaintiffs' allegations and moves for summary judgment on the sole ground that he was not their "employer" and/or a "joint employer" alongside JFE Franchising. ECF No. 68. Relying on *Gray v. Powers*, 673 F.3d 352 (5th Cir. 2012), he argues that he cannot be held liable for the alleged overtime pay violation because there is no evidence that he "(1) possessed the power

---

*v. T.A.S.T.E. Food Prods., Inc.*, 2014 WL 412327, at *5 (W.D. Tex. Feb. 3, 2014). Furthermore, while an employee who brings suit for unpaid overtime compensation "has the burden of proving that he performed work for which he was not properly compensated," if "the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes," the burden of proof "shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946). However, it is not clear that the FLSA permits employees to bring a private action based on an employer's violation of the Act's recordkeeping requirements. The Sixth Circuit has held that it does not, *Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 843 (6th Cir. 2002), but the Fifth Circuit has not decided that question. This Court need not reach that issue because Defendant Kim did not raise it in his motion for summary judgment.

In addition to the overtime claim, Plaintiffs Song and Bae allege that Defendants violated § 15(a)(3) of the FLSA by firing them in retaliation for complaining that they and other employees were not being paid proper overtime compensation. ECF No. 46 at ¶¶ 37–47. The scope of the prohibition contained in § 15(a)(3)—which states that it is "unlawful for any *person* . . . to discharge or in any other manner discriminate against any employee" for making a complaint under the Act, 29 U.S.C. § 215(a)(3) (emphasis added)—includes retaliators who may not qualify as an employee's actual "employer" for purposes of the Act's overtime pay requirements (as well as the statute's other substantive economic provisions, such as its minimum wage requirements). *Arias v. Raimondo*, 860 F.3d 1185 (9th Cir. 2017). Thus, even if Defendant Kim's argument in support of the present motion had merit—i.e., even if he does not qualify as Plaintiffs' actual "employer" or a "joint employer" under the FLSA—he could still face liability for violating § 15(a)(3) and would not be entitled to summary judgment on that claim.

to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." ECF No. 68 at 9 (quoting *Gray*, 673 F.3d at 355).

Plaintiffs oppose the motion for summary judgment, arguing that there is a genuine issue of material fact as to whether Defendant Kim was their "employer" and/or "joint employer." ECF No. 71. While they maintain that Defendant Kim meets the criteria identified in *Gray*, Plaintiffs also rely on a more expansive framework for determining "employer" and "joint employer" status set forth in *Wirtz v. Lone Star Steel Co.*, 405 F.2d 668, 669–70 (5th Cir. 1968) (listing five questions that courts should consider in assessing "whether a person or corporation is an 'employer' or 'joint employer'" under the FLSA). ECF No. 71 at 15–16. Plaintiffs point to evidence showing that, during the course of their employment at JFE Franchising, they were required to work at and for private events held at Defendant Kim's home, and to do work on his house, vehicles, and private ranch. ECF No. 71 at 5, 7, 9, 11–14, 16. In addition, Plaintiffs cite evidence indicating that Defendant Kim's influence within JFE Franchising enabled him to exercise power over their employment; they note, for example, that JFE Franchising's human resources manager served a dual role as Defendant Kim's secretary and conveyed work instructions to Plaintiffs. *Id.* at 14, 16. All this evidence, Plaintiffs claim,

4

demonstrates Defendant Kim's "position of authority and power" over them and provides a sufficient basis for holding him accountable, along with JFE Franchising, for violating the FLSA. *Id.* at 16.

## II.  Legal Standard for Summary Judgment

"Summary judgment is appropriate only if 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (quoting Fed. R. Civ. P. 56(a)). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence, taken as a whole, could lead a rational trier of fact to find for the nonmoving party. *Id.*; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Kariuki v. Tarango*, 709 F.3d 495, 501 (5th Cir. 2013).

The summary-judgment movant bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 615 (5th Cir. 2009). If the movant seeks summary judgment based on an issue for which the nonmoving party bears the burden of proof at trial, the movant may satisfy this initial burden by showing that there is an absence of evidence to support

5

an essential element of the nonmoving party's case and that, as a result, judgment should be entered in the movant's favor on the basis of purely legal considerations. *Celotex*, 477 U.S. at 325; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). If the movant fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmoving party's response. *Celotex*, 477 U.S. at 325; *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008).

If the summary-judgment movant carries its initial burden, the burden then shifts to the nonmoving party to show that summary judgment should not be granted. *Celotex*, 477 U.S. at 323–24; *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). The nonmoving party may discharge this burden by identifying specific evidentiary material showing that there is a genuine issue for trial. *Sanchez v. Young Cty., Tex.*, 866 F.3d 274, 279 (5th Cir. 2017); *Isquith ex rel. Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 198–200 (5th Cir. 1988).

On a motion for summary judgment, "a court must view the evidence 'in the light most favorable to the opposing party.'" *Tolan*, 572 U.S. at 657 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The nonmoving party's evidence must be accepted as true, and all reasonable inferences must be drawn in that party's favor. *Anderson*, 477 U.S. at 255; *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002); *Richardson v. Oldham*, 12 F.3d 1373, 1379 (5th Cir. 1994). "If

6

reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Carlson v. FedEx Ground Package Sys., Inc.*, 787 F.3d 1313, 1318 (11th Cir. 2015) (quoting *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997)); *accord Askanase v. Fatjo*, 130 F.3d 657, 665 (5th Cir. 1997) ("Summary judgment is inappropriate when conflicting inferences and interpretations may be drawn from the evidence."); *see also Byrd v. Roadway Express, Inc.*, 687 F.2d 85, 87 (5th Cir. 1982) ("That the movant appears more likely to prevail at trial is no reason to grant summary judgment; it is not the province of the court on a motion for summary judgment to weigh the evidence, assess its probative value, or decide factual issues.").

### III.  Discussion

#### A. Joint Employment and the Fair Labor Standards Act

Section 7(a) of the FLSA mandates that "no employer shall employ any of his employees . . . for a workweek longer than forty hours" unless the employee is compensated for time worked in excess of that threshold "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Liability for violating the FLSA's overtime provision attaches to individuals and entities who qualify as an "employer." *See Donovan v. Grim Hotel Co.*, 747 F.2d 966, 971 (5th Cir. 1984).

In keeping with its "remedial and humanitarian" purpose, *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944), the FLSA defines the term "employer" expansively: the statute places no express limitation on the word's meaning, stating only that it "*includes* any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d) (emphasis added); *see also id.* § 203(a) (defining "person" as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons"). The Act defines the related terms "employee" and "employ" in similarly broad fashion. *Id.* § 203(e)(1) (defining "employee" as "any individual employed by an employer"); *id.* § 203(g) (stating that the term "employ" "includes to suffer or permit to work"). As the Supreme Court has recognized, the "striking breath" of these definitions brings within the FLSA's coverage some employment relationships that might not qualify as such "under a strict application of traditional agency law principles" or under other federal statutes. *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992); *see also United States v. Rosenwasser*, 323 U.S. 360, 363 n.3 (1945) (describing the FLSA's definition of "employee" as "the broadest definition that has ever been included in any one act" (quoting 81 Cong. Rec. 7657 (1937) (statement of Sen. Hugo Black))).

Under the FLSA, "[a] single [worker] may stand in the relation of an employee to two or more employers at the same time." 29 C.F.R. § 791.2(a). "If all the relevant

facts establish that [those] employers are acting entirely independently of each other and are completely disassociated with respect to the employment of [the] employee," then they are treated as "separate and distinct" employers. *Id.* On the other hand, if the facts show that "employment by one employer is not completely disassociated from employment by the other employer(s)," then they are treated as "joint employers." *Id.*; *accord Donovan v. Sabine Irrigation Co.*, 695 F.2d 190, 194 (5th Cir. 1983) (recognizing that the term "employer" "has been interpreted to encompass one or more joint employers").

The joint employment doctrine "treats a worker's employment by joint employers as 'one employment' for purposes of determining compliance with the FLSA's wage and hour requirements." *Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125, 134 (4th Cir. 2017); *accord* 29 C.F.R. § 791.2(a) ("[A]ll of the employee's work for all of the joint employers during the workweek is considered as one employment for purposes of the Act."). Thus, a finding of joint employment requires that the hours an employee works for each joint employer "be aggregated for overtime pay purposes" and that the joint employers be held jointly and severally liable for any failure to pay proper overtime compensation. *Wirtz v. Hebert*, 368 F.2d 139, 141 (5th Cir. 1966); *Mitchell v. John R. Cowley & Bro., Inc.*, 292 F.2d 105, 111–12 (5th Cir. 1961) ("[T]he matter of joint employment . . . is a question whether for the purposes of the Act [the worker] may be deemed to be doing work for both

9

[joint employers] so that the hours worked are aggregated to determine compliance with the requirements concerning hours of work and rates of pay."); *Salinas*, 848 F.3d at 134 ("[T]he joint employment doctrine . . . holds joint employers jointly and severally liable for any violations of the FLSA[.]"); 29 C.F.R. § 791.2(a) ("[J]oint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the [A]ct, including the overtime provisions, with respect to the entire employment for the particular workweek.").

**B. *Lone Star Steel* provides the controlling framework for determining Defendant Kim's status as a joint employer.**

The test of employment under the FLSA is one of "economic reality." *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 301 (1985); *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33 (1961). This entails a fact-intensive inquiry based "upon the circumstances of the whole activity," not "isolated factors." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947); *accord Gulf King Shrimp Co. v. Wirtz*, 407 F.2d 508, 512 (5th Cir. 1969).

In *Lone Star Steel*, the Fifth Circuit set forth the following framework for determining joint employer status:

> In considering whether a person or corporation is an 'employer' or 'joint employer,' the total employment situation should be considered with particular regard to the following questions: (1) Whether or not the employment takes place on the premises of the company?; (2) How much control does the company exert over the employees?; (3) Does the company have the power to fire, hire, or modify the employment condition of the employees?; (4) Do the employees perform a 'specialty

job' within the production line?; and (5) May the employee refuse to work for the company or work for others?

405 F.2d at 669–70. Under *Lone Star Steel*, these five considerations are always potentially relevant, but they are not exhaustive since "[e]ach case must be considered in light of the total situation or whole activity to determine whether an employer-employee relationship exists." *Id.* at 669. The *Lone Star Steel* framework has long been used by the Fifth Circuit and by district courts in the circuit. *E.g.*, *Hodgson v. Griffin & Brand of McAllen, Inc.*, 471 F.2d 235, 237–38 (5th Cir. 1973); *Iztep v. Target Corp.*, 543 F. Supp. 2d 646, 653 (W.D. Tex. 2008) (quoting the *Lone Star Steel* test and observing that "[n]o one factor is determinative of whether a defendant is an 'employer' under the FLSA"); *Artis v. Asberry*, Case No. 3:10-cv-323, 2012 WL 5031196, at *4 (S.D. Tex. Oct. 16, 2012) (Costa, J.) (same).[6]

*Lone Star Steel* is valid and binding precedent. Nonetheless, Defendant Kim urges the application of a much more restrictive test of employer status set forth in *Gray*. In that case, a three-judge panel of the Fifth Circuit stated:

> To determine whether an individual or entity is an employer, the court considers whether the alleged employer: "(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."

---

[6] The district courts in *Iztep* and *Artis* also cited the four-factor test used in *Gray*, but neither based its decision on that test alone. *Iztep*, 543 F. Supp. 2d at 653; *Artis*, 2012 WL 5031196, at *4, *6–7.

673 F.3d at 355 (quoting *Williams v. Henagan*, 595 F.3d 610, 620 (5th Cir. 2010)). The panel also stated that "[i]n cases where there may be more than one employer, . . . 'each individual or entity alleged to be an employer . . . must satisfy the four part test,'" *id.* at 355 (quoting *Watson v. Graves*, 909 F.2d 1549, 1556 (5th Cir. 1990)), and that "[w]hile each element need not be present in every case, finding employer status when none of the factors is present would make the test meaningless," *id.* at 357.

Defendant's reliance on *Gray* is misplaced. Although there is some overlap between the *Lone Star Steel* framework and *Gray*'s test (in particular, *Lone Star Steel*'s second and third considerations appear to be quite similar to factors one and two of *Gray*), the four factors recited in *Gray* ignore several of the considerations expressly identified in *Lone Star Steel* as being particularly relevant to assessing joint employer status. If the panel in *Gray* had acknowledged that other factors can suffice to establish a joint employment relationship, it might be possible to reconcile its decision with *Lone Star Steel*. But *Gray*'s requirement that at least one of the four factors be present to find employer status precludes such a reading. As a result, *Gray* unavoidably contradicts *Lone Star Steel*'s mandate that joint employer determinations be based upon the totality of each situation, as well as its identification of particularly relevant considerations.

What is more, *Gray* borders on embracing the sort of blindered analysis of "isolated factors" that the "economic reality" test has long rejected. *Gray*'s four-factor test ultimately derived from the Ninth Circuit's decision in *Bonnette v. California Health and Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983). *See Williams*, 595 F.3d at 620 n.17. *Bonnette*, in turn, "reflect[s] the common-law test for determining whether an agency relationship exists, which focuses on the putative principal's 'formal right to control the physical performance of another's work.'" *Salinas*, 848 F.3d at 136 (quoting *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 69 (2d Cir. 2003)). But as the Supreme Court and Fifth Circuit have held, the common law "control test" is not the test of employment under the FLSA. *E.g.*, *Nationwide Mut. Ins. Co.*, 503 U.S. at 325–26; *Castillo v. Givens*, 704 F.2d 181, 190 (5th Cir. 1983) (observing that the Fifth Circuit "has on several occasions found employment status even though the defendant-employer had no control over certain aspects of the relationship, *e.g.*, the right to set hours, hire and fire, or determine wages"); *Gulf King Shrimp Co.*, 407 F.2d at 512 ("[I]n determining who is and who is not an employee under the Act, 'common law employee categories . . . are not of controlling significance.'" (quoting *Walling v. Portland Terminal Co.*, 330 U.S. 148, 150 (1947))). Even the Ninth Circuit has not strictly applied the *Bonnette* factors: it "now assesses whether a joint employment relationship exists using thirteen nonexclusive factors." *Salinas*, 848 F.3d at 136–37 (citing *Torres-Lopez v. May*, 111

13

F.3d 633, 639–41 (9th Cir. 1997)). Thus, while satisfying *Gray*'s four-factor test may be *sufficient* to establish joint employer status, it is by no means *necessary* for a plaintiff to do so. *Id.* at 136; *Zheng*, 355 F.3d at 69.

The conflict between *Gray* and *Lone Star Steel* implicates the Fifth Circuit's "rule of orderliness," which forbids one panel from overruling a prior panel. *Teague v. City of Flower Mound*, 179 F.3d 377, 383 (5th Cir. 1999). "Where two previous holdings or lines of precedent conflict, 'the earlier opinion controls and is the binding precedent in the circuit.'" *Soc'y of Separationists, Inc. v. Herman*, 939 F.2d 1207, 1211 (5th Cir. 1991) (quoting *Boyd v. Puckett*, 905 F.2d 895, 897 (5th Cir. 1990)). The newer opinion "is of no effect." *Teague*, 179 F.3d at 383; *see also Arnold v. U.S. Dep't of Interior*, 213 F.3d 193, 196 n.4 (5th Cir. 2000) (even conflicting language in the newer decision "has no effect"). Because it contradicts the Fifth Circuit's earlier decision in *Lone Star Steel*, *Gray*'s restrictive four-factor test is of no effect.[7] The framework set out in *Lone Star Steel* remains controlling.

---

[7] *Gray* cited two earlier Fifth Circuit decisions—*Watson v. Graves* (decided in 1990) and *Williams v. Henagan* (decided in 2010)—in support of its four-factor test. Like *Gray*, both *Watson* and *Williams* are panel decisions issued after *Lone Star Steel*, and therefore are invalid under the rule of orderliness to the extent they conflict with *Lone Star Steel*. But unlike *Gray*, those two cases arguably do not contradict *Lone Star Steel*. In particular, *Watson* and *Williams* can be distinguished because they both concerned a *sui generis* issue: the FLSA employment status of prison inmates. As the panel in *Williams* acknowledged, "other factors" besides the four *Gray* factors are used to evaluate employment relationships outside of the prison context. 595 F.3d at 620 & n.17; *see also id.* at 621 (stating that *Watson* involved "unusual facts"). Moreover, the panel in *Williams* explained that even the court in *Watson* had not found the four-factor test "dispositive" and had turned to the FLSA's purposes to resolve the case. *Id.* at 620–21.

14

### C. Defendant Kim's sole reliance on *Gray*'s four-factor test and his failure to address the broader *Lone Star Steel* framework mean that he has not satisfied his initial summary-judgment burden.

Plaintiffs do not dispute that they will bear the burden of proof at trial on whether Defendant Kim was their "employer" and/or a "joint employer" alongside JFE Franchising. *See Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014). As the summary-judgment movant, however, it is Defendant Kim who bears the initial burden of showing that there is an absence of evidence to support this aspect of Plaintiffs' case and that judgment should therefore be entered in his favor as a matter of law. *Celotex*, 477 U.S. at 325; *Fontenot*, 780 F.2d at 1194. It is well established that "[s]imply filing a summary judgment motion does not immediately compel the party opposing the motion to come forward with evidence demonstrating material issues of fact as to every element of its case." *Russ v. Int'l Paper Co.*, 943 F.2d 589, 591 (5th Cir. 1991). On the contrary, "before the non-moving party is required to produce evidence in opposition to the motion, the moving party must first satisfy its obligation of demonstrating that there are no factual issues warranting trial." *Id.* at 592. To satisfy this obligation, it is not enough for Defendant Kim to show the absence of a material fact dispute concerning just *any* aspect of his purported status as an employer or joint employer; rather, he must show the absence of a material fact dispute that concerns a *legally dispositive* aspect of that status. *Id.* (summary-judgment movant met its initial burden by "point[ing]

15

to two issues . . . , either of which would be considered *dispositive* under [governing] law" (emphasis added)); *see also Fontenot*, 780 F.2d at 1194 ("The principal function of the motion for summary judgment is to show that, in the absence of factual disputes, one or more of the essential elements of a claim or defense before the court is not in doubt and that, *as a result*, judgment should be entered on the basis of purely legal considerations." (emphasis added)).

Defendant Kim's motion for summary judgment rests entirely on the argument that there is an absence of evidence showing him to be a joint employer under *Gray*'s four-factor test. But since evidence satisfying *Gray*'s test is not necessary to establish joint employer status, the absence of such evidence cannot be dispositive of that status, either. In effect, then, Defendant's reliance on *Gray*'s test as the sole basis for his motion amounts to "a mere conclusory statement that the other side has no evidence[, which] is not enough to satisfy a movant's burden." *Ashe v. Corley*, 992 F.2d 540, 544 (5th Cir. 1993). "As a result, the burden never shifted to the plaintiffs . . . to show specific facts creating a genuine issue for trial." *Id.* Consequently, Defendant Kim's motion should be denied for failure to meet his initial burden on summary judgment, and the Court need not even consider Plaintiffs' response. *Id.*; *$92,203.00 in U.S. Currency*, 537 F.3d at 507 ("If the moving party fails to meet this initial burden, the motion must be denied, regardless

of the nonmovant's response." (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)); *see also Celotex*, 477 U.S. at 325.

### D. The summary-judgment evidence shows that there is a genuine issue of material fact as to Defendant Kim's status as a joint employer.

The motion for summary judgment should be denied based on Defendant Kim's failure to meet his initial burden. In the interest of providing a complete report, however, the Court will also briefly explain why the motion should be denied even if the summary-judgment evidence were to be considered.

At the outset, it is important to recognize how the statutory term "employer" relates to the concept of joint employment under the FLSA. As previously noted, the term "employer" "*encompass*[*es*] one or more joint employers." *Sabine Irrigation Co.*, 695 F.2d at 194 (emphasis added). Thus, where joint employment exists, the various "joint employers" are *together* considered to be *the* "employer" of the employees, and the entire aggregated relationship is deemed to be "*one* employment." *Salinas*, 848 F.3d at 134; 29 C.F.R. § 791.2(a). This point is analytically significant due to *Lone Star Steel*'s requirement that courts determine joint employer status based on "the total employment situation." 405 F.2d at 669. In the context of joint employment, "the total employment situation" includes the combined total of all the joint employers' relationships with each other and with the employees, and so the *Lone Star Steel* framework must be applied to that total set of relationships rather than to particular subparts of it.

17

Because it is uncontested that JFE Franchising "employed" Plaintiffs, any joint employment relationship involving JFE Franchising *and* Defendant Kim necessarily satisfies the FLSA's "economic reality" test of employment. *See Salinas*, 848 F.3d at 150 ("Because [p]laintiffs were economically dependent on [one joint employer] alone, they were necessarily economically dependent on [both joint employers] in the aggregate."). The only question is whether Defendant Kim can be said to have been "completely disassociated" from JFE Franchising with respect to Plaintiffs' employment; if he was not "completely disassociated," then he may be held liable as a joint employer along with JFE Franchising. 29 C.F.R. § 791.2(a); *Martin v. Bedell*, 955 F.2d 1029, 1034 n.10 (5th Cir. 1992). After carefully reviewing the evidence presented by the parties,[8] the Court concludes that there is a genuine issue of material fact on this question.

One situation where putative joint employers are not "completely disassociated" is "[w]here there is an arrangement between [them] to share the employee's services, as, for example, to interchange employees." 29 C.F.R. § 791.2(b)(1); *see also Hebert*, 368 F.2d at 141. In this case, the existence of such an arrangement between Defendant Kim and JFE Franchising is shown by the fact

---

[8] That evidence includes Plaintiffs' declarations (ECF Nos. 71-6, 71-7, 71-8, and 71-9) and depositions (ECF Nos. 68-10, 68-11, 68-12, and 71-2), as well as the depositions of Defendant Jim Kim (ECF No. 68-1) and four officers/employees of JFE Franchising (ECF Nos. 68-2, 68-3, 68-4, and 68-13).

that JFE Franchising's human resources manager, Christie Pak, directed Plaintiffs to perform work for Defendant Kim. *E.g.*, ECF No. 68-12 at 28, 32 (Olvera Dep.); *see also* ECF No. 68-3 at 28 (Pak Dep.). Another situation demonstrating that putative joint employers are not "completely disassociated" arises "[w]here one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee." 29 C.F.R. § 791.2(b)(2). In this respect, too, the evidence that Pak acted to secure Plaintiffs as a virtually on-demand source of labor for Defendant Kim's benefit is sufficient to show that JFE Franchising acted in the interest of Defendant Kim in relation to Plaintiffs.

Assessing the summary-judgment evidence in light of the *Lone Star Steel* framework confirms that there is a triable issue as to whether Defendant Kim was "completely disassociated" from JFE Franchising with respect to Plaintiffs' employment.

The first *Lone Star Steel* consideration asks whether "the employment takes place on the premises of the [putative joint employer]." 405 F.2d at 669. Plaintiffs performed much of their work at JFE Franchising's headquarters but, pursuant to Pak's instructions, also worked on premises owned by Defendant Kim. *E.g.*, ECF No. 71-6 (Bae Decl.); ECF No. 71-8 (Olvera Decl.); ECF No. 71-9 (Song Decl.). In addition, at least two of the plaintiffs—Olvera and Matthew Kim—were required to work on Defendant Kim's personal property. ECF No. 71-7 (Plaintiff Kim Decl.)

(maintenance of vehicles that only Defendant Kim and his wife drove); ECF No. 71-8 (Olvera Decl.) (maintenance of Defendant Kim's personal cars and work on Defendant Kim's home and ranch near Austin). The fact that Pak directed Plaintiffs to do work at or on Defendant Kim's property (often during normal working hours when they would have been expected to remain on company premises) indicates that JFE Franchising and Defendant Kim were not "completely disassociated" with respect to Plaintiffs' employment.

The second and third *Lone Star Steel* considerations ask two related questions: "[h]ow much control does the [putative joint employer] exert over the employees," and "[d]oes the [putative joint employer] have the power to fire, hire, or modify the employment condition of the employees?" 405 F.2d at 669. The summary-judgment evidence shows that, on several occasions, Defendant Kim exercised significant control over Plaintiffs, the work they were required to do, and when and where they were required to perform their work. For example:

▪ Plaintiff Bae's job duties included developing new food, educating franchisees, assisting with private branding and some accounting, and running the company's sushi school. ECF No. 71-6. Nonetheless, Bae was also required to prepare and serve food to guests at Defendant Kim's home during events that extended until late in the evening. *Id.*

20

- Plaintiff Matthew Kim was tasked with maintaining vehicles for Defendant Kim—a departure from his usual job duties, which included enforcing the company's food safety policies and organizing company sales data. ECF No. 71-7.

- During his employment at JFE Franchising, Plaintiff Olvera's job duties consisted of a wide range of warehouse work and later included managing inventory, maintaining JFE Franchising's building, and keeping track of company assets. ECF No. 71-8. But Olvera was also instructed to do other a wide variety of work for Defendant Kim, including: taking Defendant Kim's cars (which included a white Porsche Panamera, a BMW 7 Series, and a Cadillac) in for servicing and maintenance; setting up chairs, tables, and food for private events at Defendant Kim's home and serving food to guests; assisting Defendant Kim's wife with a television that would not turn on (which Olvera determined was due to an issue with the electrical breaker at Defendant Kim's house); investigating a problem with the gas lamps on the exterior of Defendant Kim's house; directing painters who were working on Defendant Kim's home; resolving an issue with Defendant Kim's water and sprinkler system; hiring and directing a landscaper in connection with yard work at Defendant Kim's home; and assisting in surveying Defendant Kim's ranch near Austin for property damage following a flood. *Id.*

▪ Plaintiff Song's job duties included downloading, organizing, and analyzing data from a third-party vendor portal, checking locations for new business opportunities, and running sushi kiosks when necessary. ECF No. 71-9. But Song was also required to perform work for private events held at Defendant Kim's home. Song helped with setting up chairs, tables, and decorations, and with picking up and delivering food. After the events were over, Song would pick up trash from Defendant Kim's home, disassemble the tables and chairs, and perform general clean-up. *Id.*

That Defendant Kim exercised this control indirectly, by having Pak relay instructions to Plaintiffs, does not lessen its importance as an indicator of joint employer status. *See Griffin & Brand*, 471 F.2d at 238 ("The fact that [the putative joint employer] effected the supervision by speaking to the crew leaders, who in turn spoke to the harvest workers, rather than speaking directly to the harvest workers does not negate a degree of apparent on-the-job control over the harvest workers."). In fact, Defendant Kim's utilization of Pak, who held a formal position of authority within JFE Franchising, strengthens the conclusion that he and the company were not "completely disassociated" with respect to Plaintiffs' employment.

There does not appear to be any evidence that Defendant Kim fired or hired Plaintiffs or other similarly-situated employees, but the control he exercised over important aspects of their work, described above, effected a significant modification

22

in the conditions of their employment. Moreover, the fact that Defendant Kim was able to actually exercise such control over Plaintiffs' work tends to suggest that he also held the power to fire employees if they did not acquiesce in that control or if they did not perform the work to his satisfaction.[9]

The fourth *Lone Star Steel* consideration asks whether "the employees perform a 'specialty job' within the production line." 405 F.2d at 670. Plaintiffs did not work on a production line, but since the work they did for Defendant Kim also was not akin to a "specialty job," this consideration does not tilt against joint employer status.

The fifth *Lone Star Steel* factor asks whether the employees can "refuse to work for the [putative joint employer] or work for others." 405 F.2d at 670. Given her position of authority within JFE Franchising, employees would have reasonably understood Pak's instructions—including those issued to Plaintiffs regarding work for Defendant Kim—as mandatory requirements upon which their continued employment at JFE Franchising was conditioned. Moreover, it is undisputed that, upon being separated from employment at JFE Franchising, Plaintiffs were also

---

[9] There is no merit in Defendant Kim's assertion that because several of the Plaintiffs, at deposition, did not identify him as an individual who had the power to hire or fire employees, it is "conclusively establishe[d]" that he did not have that power. ECF No. 72 at 3–6. Plaintiff Bae testified that Defendant Kim "personally hired" him. ECF No. 71-2 at 50. Moreover, both Plaintiff Matthew Kim and Plaintiff Olvera identified Christie Pak as having the power to hire or fire employees. ECF No. 68-10 at 20 (Matthew Kim Dep.); ECF No. 68-12 at 21–22 (Olvera Dep.). Given Pak's role as a conduit of control for Defendant Kim, that evidence reasonably supports the inference that Defendant Kim also had power over the hiring and firing of employees.

separated from their employment with Defendant Kim. *See Hebert*, 368 F.2d at 140. These facts demonstrate a clear link between Plaintiffs' work for Defendant Kim and their employment at JFE Franchising, and thus further support the conclusion that he and the company were not "completely disassociated."

The five considerations listed in *Lone Star Steel* are not exhaustive, but the fact that the summary-judgment evidence pertaining to those considerations largely supports Defendant Kim's status as a joint employer confirms that his motion for summary judgment must be denied.[10]

### IV.  Conclusion

For the above-stated reasons, the Court RECOMMENDS that Defendant Jim Kim's motion for summary judgment be DENIED.

**The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error. *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).**

---

[10] Because the second and third *Lone Star Steel* considerations largely overlap with *Gray*'s first and second factors, the same evidence creates a triable issue of fact under that test as well. The evidence also supports the third *Gray* factor: because Defendant Kim was able to require Plaintiffs to work outside of their normal working hours, and because that that time was not properly compensated, he was effectively able to alter Plaintiffs' rate of payment. The fourth *Gray* factor—which concerns the maintenance of employment records—is largely irrelevant in this case because those records did not accurately reflect the work that employees were performing or the amount of time that they were being employed.

Signed on August 19, 2019, at Houston, Texas.

_____

**Dena Hanovice Palermo**
**United States Magistrate Judge**